**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RENETTA BELL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-102-JWD-SDJ** |
| **WALMART, INC., ET AL.** | |

**RULING AND ORDER**

This matter comes before the Court on Crossmark's *Motion for Summary Judgment* ("Crossmark's *MSJ*") (Doc. 47) filed by Defendant Crossmark, Inc. ("Crossmark"). Plaintiff Renetta Bell ("Plaintiff" or "Bell") opposes the motion. (Doc. 49.) Defendant has filed a reply. (Doc. 51.)

Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the Court will GRANT Crossmark's *MSJ*.

## I. RELEVANT BACKGROUND

### A. Factual Background

This case stems from an accident at the Sam's Club located at 201 Bass Pro Boulevard, Denham Springs, Louisiana. (*Plaintiff's Opposing Statement of Material Facts*, Doc. 49-1 at 2, ¶ 1.)[1] On April 29, 2023, when Plaintiff Bell was shopping in Sam's Club, she slipped on a substance or object and fell to the floor. (*Id.* at ¶¶ 1–2.) Witnesses at the scene identified the substance or object that caused the fall as a piece of meat from the Taste and Tips sample cart. (*Id.* at ¶ 3.)

[1] Defendant Crossmark did not reply to *Plaintiff's Opposing Statement of Material Facts* and therefore all of the additional facts provided in it are deemed admitted. *See* M.D. La. Civ. R. 56(f).

Defendant Crossmark operated the Taste and Tips sample cart. (*Statement of Undisputed Facts*, Doc. 47-3 at 1, ¶ 2.)[2]

Crossmark had a contract with Sam's Club to operate the Tastes and Tips sample cart. (Doc. 49-1 at 1.) That contract defined Crossmark's area of responsibility as a radius not to exceed 10 feet. (*Id.*) Plaintiff is unsure precisely where she fell, but it was close enough that the Crossmark employee who was operating the Taste and Tips sample cart at the time of the incident heard it happen. (Doc. 49-1 at 2, ¶¶ 5, 8.) Sam's Club Assistant Manager Rogas estimated that the substance or object was approximately 20 feet from the Tastes and Tips sample cart. (Doc. 47-10 at 3–4.)

### B. Procedural Background

Bell filed suit against Walmart Inc. and Sam's East, Inc. in the 21st Judicial District Court on August 10, 2023. (Doc. 1-2 at 1.) Pursuant to 28 U.S.C. §§ 1441 and 1332, Walmart and Sam's removed the case to this Court on February 12, 2024. (Doc. 1 at 1.) On November 26, 2024, Bell amended her complaint to add Crossmark as a defendant, alleging negligence. (Doc. 8 at ¶¶ 1, 3.) A *Second Amended Complaint* (Doc. 32), filed on January 2, 2026, clarified that the negligence claims were for alleged violations of the duty businesses owe to invitees under Louisiana Civil Code articles 2315 and 2317. (*Id.* at ¶ 19.) Crossmark brings this *MSJ* claiming that it owed no duty to Bell. (Doc. 47 at 1.) Crossmark argues that it only owed a duty within the 10-foot radius, per its contract with Sam's. (*Id.*) Because Bell slipped on an object 20 feet away from the Taste and Tips cart, Crossmark did not owe her a duty. (*Id.*)

## II. Summary Judgement Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

[2] Plaintiff admitted this fact. (Doc. 49-1 at 1, ¶ 1.)

Civ. P. 56(a). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

"A movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." (emphasis in original))). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (quoting *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the movant bears its burden of showing that there is no genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted) (quoting Fed. R. Civ. P. 56(e)). The nonmovant's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (cleaned up). Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

## III. PARTIES' ARGUMENTS

### A. Crossmark's *MSJ* (Doc. 47)

Crossmark argues that it had no duty to Bell because the alleged incident occurred outside its "10-foot area of responsibility" listed in its Master Service Agreement with Sam's. (Doc 47-1 at 3.) Crossmark explains that the duty analysis is determined by whether the plaintiff can support her claim that defendant owed her a duty under the law. (*Id.* (quoting *Malta v. Hebert S. Hiller Corp.*, 333 So. 3d 384, 395 (La. 2021) (citing *Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289, 292 (La. 1993)).) Crossmark contends that a duty could only be established if the slip and fall occurred within the 10-foot area. (*Id.* at 3.)

Crossmark also contends that it is an undisputed fact that the hazard was outside the 10-foot radius. (*Id.* at 4.) Crossmark argues that "Sam's Club ASM, John Rogas identified the closest Tastes & Tips station at approximately 20 feet from where the object allegedly involved in Plaintiff's incident was located." (*Id.* (citing Doc. 47-10 at 3–4).) Crossmark further argues that "based on contemporaneously taken photographs," the object in question was located across from the middle freezer and not within the 10-foot radius. (*Id.*) Crossmark claims that the location was corroborated by Bell. (*Id.*)

Crossmark reasserts that the undisputed evidence demonstrates that the object was outside of the 10-foot radius. (*Id.*) Therefore, it did not owe a duty to Bell, cannot be negligent, and the *MSJ* should be granted. (*Id.*)

### B. Bell's Opposition (Doc. 49)

Bell claims there are three reasons why Crossmark's *MSJ* should be denied. (Doc. 49 at 4–9.) Bell argues first, that Crossmark owed her a duty (*id.* at 4); second, that the contract does not define Crossmark's duty (*id.* at 5); and third, that there is a genuine dispute of material fact. (*Id.* at 7.)

Regarding Crossmark's duty, Bell contends that Crossmark's argument that its duty was limited by the 10-foot radius is legally incorrect and disputed. (*Id.* at 4.) Bell explains that Louisiana courts apply a duty/risk analysis for negligence claims under Louisiana Civil Code articles 2315 or 2317.1. (*Id.* (citing *Farrell v. Circle K Stores, Inc.*, 22-849 (La. 3/17/23), 359 So. 3d 467, 473)).) Bell explains that under a duty/risk analysis a plaintiff must show:

> (1) the defendant owed a duty to conform its conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and (5) the plaintiff sustained actual damages (the damages element).

(*Id.*)

Bell maintains that Crossmark owed her a duty because it created the hazard that caused her to slip and fall. (*Id.*) Bell explains that Louisiana courts use the "ease of association test" to determine if the risk encountered by the plaintiff falls within the scope of defendant's duty. (*Id.* at 4–5 (citing *Faucheaux*, 615 So. 2d at 294).) That inquiry, says Bell, is easily satisfied in this case. (*Id.* at 5.) Bell asserts that Crossmark operated its Taste & Tips cart and distributed samples to customers who moved throughout the store. (*Id.*) Further, witnesses identified the object Bell slipped on as a piece of meat, consistent with the samples Crossmark distributed that day. (*Id.*) Bell argues that Crossmark's conduct was "easily associated" with the risk created by distributing a food sample that customers could carry, drop, or discard in a way that could create a hazard. (*Id.*)

Bell also asserts that Crossmark's duty to "act reasonably" concerning a "foreseeable risk" arises independently from the 10-foot radius. (*Id.*) Bell argues that the contract outlines Crossmark's obligation, not the scope of its duty. (*Id.*) Because the food travelled "within the scope of protection" created by Crossmark, Crossmark owed Bell a duty regardless of the distance between the booth and where the food sample landed. (*Id.*)

Next, Bell asserts that Crossmark's argument fails because "it conflates its contractual obligations" with its independent duty owed to Bell. (*Id.*) Bell notes that the Louisiana Supreme Court has stated that contracts represent "the law between the parties," unless there is a conflict with other legislation or public policy. (*Id.* at 5–6 (citing *Breaux v. Wilson*, 431 So. 3d 375 (La. 2026)).) But, Bell explains, the Court also recognizes that contracts can affect third parties only when provided by the law. (*Id.* at 6 (citing La. Civ. Code art. 1985).) Bell therefore argues that under Louisiana law, contracts are binding only on the parties who are a part of the agreement. (*Id.*) Since Bell is not a party to the contract, there is nothing in the law that would permit the contract to affect third parties. (*Id.*) According to Bell, the contract cannot "define, limit, or extinguish" Crossmark's duty to her. (*Id.*)

Second, Bell contends that Crossmark's internal policy states that its duty was not confined to the 10-foot radius. (*Id.* at 9.) Moreover, numerous training materials advised Crossmark employees to address hazards at any distance from the Tastes & Tips cart. (*Id.* (citing Doc. 49-1).) According to Bell, the training materials negate Crossmark's argument that its responsibility was limited to the 10-foot radius. (*Id.*)

Third, Bell contends there are genuine disputes of material fact. (*Id.* at 7.) Bell explains the summary judgment standard, specifically pointing out that "the mover must meet a strict standard by showing that it is quite clear as to what the truth is and excludes any real doubt as to the

existence of material fact." (*Id.* at 8.) Bell concludes: "in deciding a summary judgment motion, courts resolve factual controversies in favor of the non-moving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." (*Id.* (citing *Little*, 37 F.3d at 1075).)

Here Bell claims that Crossmark's *MSJ* rests entirely on the assertion that the hazard was located outside the 10-foot radius and therefore outside the area where Crossmark's owed a duty. (*Id.*) Bell asserts that there is no evidence to corroborate this assertion. (*Id.*) Bell contends that Crossmark's 20-foot figure is an approximation, not a measurement. (*Id.*) Bell further asserts there are no witnesses to corroborate the location and that she could not recall where the slip and fall occurred. (*Id.* (citing Doc. 49-2 at 2–9)). Bell contends that Crossmark cannot meet its burden of establishing the absence of a material fact, namely the location of the object on which she slipped. (*Id.* at 9.)

For these three reasons, Bell argues that Crossmark has not met the strict burden of proof for summary judgement. (*Id.*) Because genuine issues of material fact exist that preclude judgment as a matter of law, Crossmark's *MSJ* must be denied. (*Id.*)

**C. Crossmark's Reply (Doc. 51)**

Crossmark contends there is evidence to establish that the substance or object was outside the 10-foot radius. (Doc. 51 at 1.) Crossmark explains that based on the floor plan, there were three possible locations for the Tastes & Tips cart, all of which would place the substance or object outside the 10-foot radius. (*Id.*) Crossmark corroborates this statement with photographic evidence and statements Bell made in her deposition. (*Id.* at 1–2 (citing Doc. 47-8 at 4; Doc. 47-11; Doc. 47-12; Doc. 47-13; Doc. 47-14).) "It was physically impossible for the Taste and Tips cart to have been located within 10 feet of the object Plaintiff claims she slipped on." (*Id.* at 5.)

Crossmark argues that Bell attempts to refute that evidence with speculation and unsubstantiated assertions, which will not satisfy the plaintiff's burden. (*Id.* at 2 (citing *Bellard v. Gautreaux*, 675 F. 3d 454, 460 (5th Cir. 2012); *Grimes v. Tex. Dep't of Mental Health*, 102 F. 3d 137, 139–40 (5th Cir. 1996)).) Rather, the law requires the non-movant to present actual evidence to create a material issue of fact. (*Id.* (citing *Pesnell v. Hobby Lobby Stores, Inc.*, 2026 WL 1148399, at *3 (W.D. La. Apr. 28, 2026) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986))).)

Crossmark points out that the evidence that Bell provides—Sam's Club ASM John Rogas' interrogatory response that the object or substance was "approximately 20 feet" away from the Taste and Tips sample cart—clearly establishes that the object or substance was outside the 10-foot radius. (*Id.* at 3 (citing Doc. 49 at 7–8 (citing Doc. 47-10 at 3–4)).) Crossmark further argues that there is no indication that the 20-foot measurement was an estimate and contends that Bell's argument misconstrues the word "approximately." (*Id.*) Therefore, according to Crossmark, there are no material facts in dispute and Crossmark's *MSJ* should be granted. (*Id.* at 5–6.)

Further, Crossmark argues that Bell misapplies Louisiana law. (*Id.* at 4.) To establish liability for injury caused by a defective thing, a plaintiff must prove "(1) that the thing was in the defendant's custody [or *garde*], (2) that the thing contained a defect which presented an unreasonable risk of harm to others, [3] that this defective condition caused damage, and (4) that the defendant knew or should have known of the defect." (*Id.* (quoting *Miller v. Zodiak Transp. Logistics & Sols., LLC*, 2026 WL 2875989, at *8 (M.D. La. Sep. 24, 2026) (*citing Renwick v. PNK Lake Charles, L.L.C.*, 901 F. 3d 605, 616 (5th Cir. 2018); *Jordan v. Hickman*, 899 So. 2d 830, 833 (La. App. 2 Cir. 2005))).) Further, "Louisiana courts have generally held that (1) ownership of a thing establishes a rebuttable presumption of custody or '*garde*,' and (2) in a case of non-

ownership, a defendant may be found to have custody over property when he exercises direction and control of the thing and derives some benefit from it." (*Id.* (quoting *Butler v. Denka Performance Elastomer, L.L.C*, 16 F.4th 427, 441–42 (5th Cir. 2021)).)

Crossmark argues that it did not own the premises and therefore there is no presumption that Crossmark had custody or garde of the area outside the 10-foot radius. (*Id.* at 5.) Further, it neither had control nor received any benefit beyond that area. (*Id.* (citing Doc. 47-7 at 4).) Accordingly, as a matter of law, it had no custody or garde outside the 10-foot radius. (*Id.*) Crossmark asserts that its negotiated custody of the 10-foot radius around the Tastes & Tips cart marks the extent of the area in which Crossmark owed a duty. (*Id.*) Hence, any duty owed outside this area was exclusively that of Sam's Club and therefore Bell's claims against Crossmark should be dismissed. (*Id.* at 6.)

## IV. DISCUSSION

### A. Applicable Law

"A federal court sitting in diversity applies the substantive law of the forum state." *Bordenave v. Delta Air Line, Inc.*, No. 18-637, 2020 WL 377017, at *2 (M.D. La. Jan. 23, 2020) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "Under Louisiana law, '[t]he duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability.'" *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (quoting *Lemann v. Essen Lane Daiquiris*, 05-1095 (La. 3/10/06), 923 So. 2d 627, 632–33); *see also Bonano v. Docar Sales, Inc.*, 24-195 (La. App. 1 Cir. 10/22/24), 405 So. 3d 886, 892, *writ denied*, 25-11 (La. 4/1/25), 404 So. 3d 653 (noting that the duty-risk analysis also applies under Louisiana Civil Code Article 2317.1); *Bonano v. Docar Sales, Inc.*, 24-194 (La. App. 1 Cir. 3/20/25), 407 So. 3d 985, 990 (same). Whether a claim arises in negligence under article 2315 or in premises liability under article

2317.1, the traditional duty/risk analysis is the same. *Carrier v. RPM Pizza Baton Rouge LLC*, 672 F. Supp. 3d 211, 216 (W.D. La. 2023). "Under this approach, [a] plaintiff must prove the following five elements:" (1) duty of care, (2) breach of duty of care, (3) cause-in-fact, (4) scope of duty, and (5) damages. *Audler*, 519 F.3d at 249 (citing *Lemann*, 923 So. 2d at 633). If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable. *Id.* (citing *Mathieu v. Imperial Toy Corp.*, 94-952 (La. 11/30/94), 646 So. 2d 318, 321).

***1. Duty***

"Whether the defendant owed the plaintiff a duty is a legal question for the court to decide." *Jones v. Stewart*, 16-0329 (La. App. 4 Cir. 10/5/16), 203 So. 3d 384, 390, *writs denied*, 16-1967, 16-1962, 16-1968. "Absent a duty to the plaintiff, there can be no actionable negligence and, hence, no liability." *Id.* The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed her a duty. *Id.* (citing *Faulkner v. The McCarty Corp.*, 02-1337 (La. App. 4. Cir. 6/11/03), 853 So. 2d 24, 28).

a. <u>Louisiana Civil Code article 2317</u>

Louisiana Civil Code article 2317 establishes that there is a duty to exercise reasonable care and to keep that which is within one's custody free from unreasonable risk of harm. La. Civ. Code art. 2317; *RPM Pizza Baton Rouge LLC*, 672 F. Supp. 3d at 218. "The general rule is that the owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition." *Vincinelli v. Musso*, 01-0557 (La. App. 1 Cir. 2/27/02), 818 So. 2d 163, 165. The party who has custody of property must discover any unreasonably dangerous condition on the premises and either correct the condition or warn potential victims of its existence. *Farr v. Montgomery Ward and Co., Inc.*, 82-0510 (La. App. 1 Cir. 4/5/83), 430 So. 2d 1141, 1143, *writ denied*, 435 So. 2d 429 (La. 1983). This duty is the same under the premise liability theory of Louisiana Civil Code article 2317 and the negligence liability theory of Louisiana Civil Code

article 2315. *Carroll v. Am. Empire Surplus Lines Ins. Co.*, 289 F. Supp. 3d 767, 770–71 (E.D. La. 2017); *Williams v. Leonard Chabert Med. Ctr.*, 98-1029, (La. App. 1 Cir. 9/26/99), 744 So. 2d 206, 209, *writ denied*, 2000-0011 (La. 2/18/00), 754 So. 2d 974. Under either theory, the plaintiff has the burden of proving that: (1) the property that caused the damage was in the custody of the defendant; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause in fact of the resulting injury; and (4) the defendant had actual or constructive knowledge of the risk. *See Farr*, 430 So. 2d at 1143; La. Civ. Code art. 2317.1.

Generally, ownership of a thing establishes a rebuttable presumption of custody. *Butler*, 16 F.4th at 441–42. In cases of non-ownership, a defendant may have custody over property when it exercises direction and control of the thing and derives some benefit from it. *Id.* To determine if a non-owner has custody, courts should consider (1) whether the defendant bears a special relationship such that it has the right of direction and control over the thing and (2) what benefit, if any, the defendant derives from the thing. *Dupree v. City of New Orleans*, 99-3651 (La. 8/31/00), 765 So. 2d 1002, 1009; *Stewart v. Fam. Dollar, Inc.*, No. 23-314, 2025 WL 2680770, *2 (M.D. La. Sep. 18, 2025) (deGravelles, J.); *Covey v. Seifert*, No. 18-99, 2019 WL 303008, *9 (M.D. La. Jan. 23, 2019) (deGravelles, J.). More than one person or entity can have custody over the property at one time. *Dupree*, 765 So. 2d at 1009. Custody is a question of fact. *Id.*

b. <u>Louisiana Civil Code article 2315</u>

There is a "universal duty on the part of the defendant in negligence cases to use reasonable care so as to avoid injury to another." *Boykin v. La. Transit Co.*, 96-1932 (La. 3/4/98), 707 So. 2d 1225, 1231.

### 2. ***Breach of Duty***

Whether there was a breach of the duty owed is a question of fact or a mixed question of law and fact. *Id.* Louisiana courts apply the risk/utility balancing test to make this determination. *Bufkin v. Felipe's La. LLC*, 14-0288 (La. 10/15/14), 171 So. 3d 851, 856 (citing *Chambers v. Vill. of Moreauville*, 11-898 (La. 1/24/12), 85 So. 3d 593, 597–98). The Louisiana Supreme Court has synthesized the risk/utility balancing test to a consideration of four pertinent factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and, (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. *Id.* (citing *Broussard v. State ex rel. Off. of State Bldgs.*, 12-1238 (La. 4/5/13), 113 So. 3d 175, 184; *Dauzat v. Curnest Guillot Logging, Inc.*, 08-528 (La. 12/2/08), 995 So.2d 1184, 1186–87 (per curiam); *Hutchinson v. Knights of Columbus, Council No. 5747*, 03-1533 (La. 2/20/04), 866 So. 2d 228, 235; *Pitre v. Louisiana Tech. Univ.*, 95-1466 (La. 5/10/96), 673 So. 2d 585, 591–93); *see also Farrell v. Circle K Stores, Inc.*, 22-849 (La. 3/17/23), 359 So. 3d 467, 474.

### *3. Cause-in-Fact*

Cause-in-fact usually is a "but for" inquiry which tests whether the accident would or would not have happened but for the defendant's substandard conduct. *Boykin*, 707 So. 2d at 1230.

### *4. Scope of Duty*

"The scope-of-the-duty inquiry is fact sensitive and ultimately turns on a question of policy as to whether the particular risk falls within the scope of the duty" *Malta v. Hebert S. Hiller Corp.*, 21-209 (La. 10/10/21), 333 So. 3d 384, 399. The extent (scope) of protection owed by a defendant to a particular plaintiff is determined on a case-to-case basis so as to avoid making a defendant an insurer of all persons against all harms. *Todd v. State Through Dep't of Soc. Servs., Office of Cmty. Servs.*, 96-3090 (La. 9/9/97), 699 So. 2d 35, 39. As the *Todd* court further observed, "[i]n some instances a risk may not be found within the scope of a duty where the circumstances of that

particular injury to that plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty." *Id*. This principle was first recognized in *Hill v. Lundin & Associates, Inc.*, 51220 (La. 1/17/72), 256 So. 2d 620, 622:

> Just because a risk may foreseeably arise by reason of conduct, it is not necessarily within the scope of the duty owed because of that conduct. Neither are all risks excluded from the scope of duty simply because they are unforeseeable. The ease of association of the injury with the rule relied upon, however, is always a proper inquiry.

## B. Analysis

### *1. Liability under Louisiana Civil Code Article 2317*

Plaintiff Bell claims that Crossmark owed her a duty under Louisiana Civil Code article 2317 as a custodian of the area around the Taste and Tips sample cart. (Doc. 49 at 4–5.) Accordingly, at trial, Plaintiff Bell would have the burden of proving that: (1) the property that caused the damage was in the "custody" of Crossmark; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises (breach of the duty); (3) that the defect in the property was a cause in fact of the resulting injury; and (4) that defendant had actual or constructive knowledge of the risk. *Farr*, 430 So. 2d at 1143. On this *MSJ*, Crossmark bears the initial burden of identifying "'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)). Crossmark has met that burden. Plaintiff has not done "more than simply show that there is some metaphysical doubt as to the material facts. . ." nor has Plaintiff "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal

citations omitted) (quoting Fed. R. Civ. P. 56(e)). Accordingly, there is no genuine issue of material fact and Crossmark's *MSJ* is granted.

a. Property in Crossmark's Custody

Regarding Bell's article 2317 claim, she bears the burden of raising an issue of fact that the property at issue, the area where she slipped, was within Crossmark's custody. *Farr*, 430 So. 2d at 1143. Even though the exact location of the injury is disputed, there is a rebuttable presumption that the entire area at issue was in Sam's custody because Sam's owned the store. *Butler*, 16 F.4th at 441–42; (Doc. 32 at ¶ 4.) But, more than one entity may have custody over the property simultaneously; therefore, the Court must determine if Crossmark also had custody over the area where the accident occurred. *Dupree*, 765 So. 2d at 1009. After considering Crossmark's special relationship with the property and the benefit received from it, the Court finds that Crossmark only had custody of the contractually agreed upon 10-foot radius around the Taste and Tips sample cart. *Id.*

The Court first considers whether Crossmark bears a special relationship such that it has the right of direction and control over the site of the accident. *Id.* In determining whether a party has a legal relationship with a thing so as to provide it with the right of direction and control over it, courts have looked to a variety of factors including: (1) whether the party has the right to use, alienate, encumber, or lease the thing, or otherwise grant a right of use to others, *see Doughty v. Insured Lloyds Ins. Co.*, 90-1733 (La. 3/11/91), 576 So. 2d 461, 464–65; *Smith v. State of Louisiana*, 91-0618 (La. App. 1 Cir. 9/28/92), 620 So. 2d 1172, 1183–84; (2) whether the party has the right to authorize alterations or repairs to the thing, *Butler v. Re/max New Orleans Props., Inc.*, 01-2349 (La. App. 4 Cir. 9/11/02), 828 So. 2d 43, 46; and (3) whether the party has an unfettered

right to access the thing at will, versus only a limited access to enter, *see Bethea v. Great Atl. & Pac. Tea Co.*, 07-1385 (La. App. 4 Cir. 9/30/09), 22 So. 3d 1114, 1116.

Bell argues that the contract between Crossmark and Sam's cannot be used to define Crossmark's duty to third parties who are not parties to the contract. (Doc. 49 at 5–6.) However, Bell admits that the Louisiana Supreme Court recognizes that contracts can affect third parties when provided by the law. (*Id.* at 6 (citing La. Civ. Code art. 1985).) The law regarding premises liability under Louisiana Civil Code article 2317.1 requires the Court to determine if Crossmark had garde of the property that caused damage to Bell. *See Farr*, 430 So. 2d at 1143; La. Civ. Code art. 2317.1. To do so, the Court must consider whether Crossmark bore a special relationship such that it had the right of direct and control over the property. *See Dupree*, 765 So. 2d at 1009; *Stewart*, 2025 WL 2680770; *Covey*, 2019 WL 303008. The contract between Crossmark and Sam's defined what rights Crossmark had in relation to the property so it can be used to make that determination. *See Ehrman v. Holiday Inns, Inc.*, 94-0312 (La. App. 4 Cir. 3/29/95), 653 So. 2d 732, 737–40 (using the leasing contract to determine defendant's relationship with the property); *Thumfart v. Lombard*, 91-2602 (La. Ct. App. 4 Cir. 1/21/93), 613 So. 2d 286, 290 (using a servitude agreement to understand defendant's relationship with the property).

The contract between Sam's Club and Crossmark provided Crossmark "reasonable access to the Sam's Club facility . . . to enter such premises for the purposes of setting up, preparing, executing, cleaning up, and breaking down" the Taste and Tips sample cart. (Doc. 47-7 at 5.) The contract provided a limited right to use the Sam's Club facility but did not provide a right to alienate, encumber, lease, or otherwise grant a right of use to others. *See DoughtyI,* 576 So.2d at 464–65; *Smith*, 620 So. 2d at 1183–84. Nor did the contract provide Crossmark the right to authorize alterations or repairs to the property. *See Butler*, 828 So. 2d 43. Crossmark only had a

limited right to access the facility, not an "unfettered right to access the [property] at will." *Bethea*, 22 So. 3d at 1116. Therefore, Crossmark did not have such a special relationship with the Sam's Club facility so as to give it garde of the entire facility.

The contract required Crossmark to "maintain the immediate areas surrounding the [Taste and Tips sample cart], in a radius no greater than ten (10) feet around the [Taste and Tips sample cart], in a neat and clean condition. (Doc. 47-7 at 4.) While that provision did not give Crossmark full control over the area, it did establish that Crossmark had some level of control and special relationship over the 10-foot radius around the Taste and Tips sample cart. But Crossmark's special relationship over the Sam's Club facility did not extend past that 10-foot radius.

Crossmark did receive a benefit from the entire Sam's Club facility. Courts generally require the benefit to be economic. The court in *Ehrman v. Holiday Inns, Inc.* found that a parking garage operator derived a benefit from an alley because customers entered and exited the parking garage from that alley. 653 So. 2d at 739. Because the parking garage operator benefited economically and had special control over the alley per its leasing contract, the court found the operator had custody over it such that it could be held liable for an accident in the alley. *Id.* Similarly in *Thumfart v. Lombard*, the court held that the defendant derived a benefit from a parking lot adjacent to a building he owned because the tenant businesses and their customers used the parking lot to visit the businesses. 613 So. 2d at 290. Even though Lombard did not own the area of the parking lot where the injury occurred, the court held that he had custody over it because he benefitted economically from it and held a servitude over the land. *Id.* at 290–92. Similarly here, customers were able to access Crossmark's Taste and Tips sample cart because it was located in the Sam's Club facility.

Therefore, Crossmark had garde over the area within the 10-foot radius around the Taste and Tips sample cart because it had some level of control over that area and benefitted from the area. *Dupree*, 765 So. 2d at 1009. Even though Crossmark received a benefit from the area outside that radius, it did not have a level of control over it so it did not have garde. *Id.*

b. Unreasonable Risk of Harm on the Property

Bell next bears the burden of raising a material issue of fact as to whether the property had a condition that created an unreasonable risk of harm to persons on the premises within Crossmark's garde. *Farr*, 430 So. 2d at 1143. Because Crossmark only had custody over the Sam's facility within the 10-foot radius of its cart, Bell must raise an issue of fact as to whether a condition that created an unreasonable risk of harm to persons existed within that area. In response to Crossmark's interrogatories, Sam's Club Assistant Manager Rogas estimated that the substance or object was approximately 20 feet from the Tastes and Tips sample cart. (Doc. 47-10 at 3–4.) Crossmark has therefore met its burden to identify "'those portions of the pleadings, depositions, *answers to interrogatories*, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact'" because it has shown that the condition was outside the 10-foot radius. *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)) (emphasis added).

Bell contends that "the record contains no evidence establishing the exact location of Plaintiff's fall" and that the 20-foot figure is "at best, an approximation . . . not a measurement . . . ." (Doc. 49 at 8.) But Plaintiff has pointed to no evidence that suggests that the site of the accident was within the 10-foot radius. A reasonable juror could give Bell the benefit of the doubt that the approximation is just that, an approximation, and that the accident did not happen exactly 20 feet

away from the Taste and Tips sample cart. But even doing so, a reasonable juror would not find that the approximation overstated the actual distance by a factor of two. Therefore, Plaintiff has done no "more than simply show that there is some metaphysical doubt as to the material facts. . ." and Plaintiff has failed to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted) (quoting Fed. R. Civ. P. 56(e)). Accordingly, there is no genuine dispute of material fact. The condition that created an unreasonable risk of harm was outside the 10-foot radius and therefore outside the area over which Crossmark had custody. Said differently, the area within Crossmark's custody did not have a condition presenting an unreasonable risk of harm. Plaintiff's claim fails under Louisiana Civil Code article 2317.

***2. Liability under Louisiana Civil Code Article 2315***

Plaintiff Bell also claims that Crossmark owed her a duty under Louisiana Civil Code article 2315 to act as a reasonably prudent person. (Doc. 49 at 4–5.) Accordingly, at trial, Plaintiff Bell will have the burden of proving that: (1) Crossmark had a duty to keep the area around its Taste and Tips sample cart free of hazards; (2) Crossmark breached that duty; (3) but for Crossmark's breach of that duty, Bell's injury would not have happened; (4) Crossmark's breach of the duty was also the legal cause of Bell's injury (scope of duty element); and (5) Bell was injured. *Audler*, 519 F.3d at 249. On this *MSJ*, Crossmark bears the initial burden of identifying "'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)). Crossmark has met that burden by showing that there is no evidence to support the breach or cause-in-fact elements. Plaintiff has not "come forward with 'specific facts showing that there is a

genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted) (quoting Fed. R. Civ. P. 56(e)). Accordingly, there is no genuine issue of material fact and Crossmark's *MSJ* is granted.

Bell argues that the training materials provided to Crossmark employees define the duty owed to her. (Doc. 49 at 9.) Indeed, the "Slips - Trips - Falls Quick Reference Guide" instructs employees to "clean up spills immediately," "pay attention to your surroundings and report hazards immediately," "remove small obstacles," and "inform coworkers about potential dangers." (Doc. 49-9 at 1.) Therefore, the Court finds that Crossmark had a duty to keep the area around its cart free from hazards that could lead to slips, trips, or falls—a more general duty that extended outside the area under its garde.

Bell argues that Crossmark breached that duty because "the meat from the Taste and Tips booth was allowed to remain on the floor for an extended period of time." (Doc. 49 at 2.) However, Crossmark correctly points out that Bell provides no evidence to support that claim. (Doc. 51 at 3.) There is no record evidence concerning how long the meat was allowed to remain on the floor before Bell slipped on it. There is also no evidence showing whether a Crossmark employee saw the meat on the floor and failed to pick it up. The record contains no support for the breach of the duty element of Plaintiff's claim. *Wease*, 915 F.3d at 997; *Stahl*, 283 F.3d at 263.

The record also contains no support for the cause-in-fact element. *Wease*, 915 F.3d at 997; *Stahl*, 283 F.3d at 263. That is, Plaintiff has failed to raise an issue of fact that, but for some action or inaction of Crossmark this accident would not have occurred. Plaintiff provides no evidence that a Crossmark employee caused the meat to fall onto the ground. There is no evidence excluding the possibility that another Sam's customer dropped the meat on the floor after walking away with a sample. Bell suggests exactly that in her opposition to the *MSJ*. (Doc. 49 at 2 ("Crossmark's

Corporate Representative, Jim Renfrow, testified that customers will sometimes walk away from the booth before consuming their sample, and that customers will, on occasion, drop or spill their samples").) Because Bell fails to prove the breach of the duty and cause-in-fact elements by a preponderance of the evidence, Crossmark is not liable. *Boykin*, 707 So. 2d at 1230 (citing *Mathieu*, 646 So. 2d at 322).

The Court finds that Crossmark has met its burden of showing the absence of factual support for Bell's claim. The burden then shifted to Bell to establish the existence of a genuine issue of material fact and/or that Crossmark is not entitled to judgment as a matter of law. Bell has failed to do so, and summary judgment in favor of Crossmark is therefore granted.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's *Motion for Summary Judgment* (Doc. 47) is **GRANTED**. Plaintiff Bell's claims against Defendant Crossmark are hereby **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on November 23, 2026.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**